for this morning is Hamdan v. Indiana University Health North Hospital Incorporated. Mr. Hodes. Thank you, Your Honor, and may it please the Court. The single issue that's before this appeal, or perhaps it's right to say the constellation of issues, is whether the District Court committed error in allowing the jury to hear repeated references to negative material about the plaintiff in this Katzpah civil rights case, even though it was protected by the peer review statutes of three different states. Now peer review protection comes in two modes. It can either be Privilege with a capital P or Confidentiality, but because time is short for purposes of this appeal, I want to put Privilege with a capital P on one side and deal with Confidentiality only. And in that regard, I want to start with the argument that we are not making, did not make in the case, but not making to this Court, and that is we are not claiming and never did claim that material that is confidentiality protected under the peer review statutes is always inadmissible for any reason. That is not our claim. It is certainly not our claim that once a piece of information has made it into the peer review process, has become part of the records, was presented to a peer review committee, that it suddenly falls irretrievably into a black hole, never to see the light of day, no matter how it was presented to the Court. That was not our argument. It was not the basis, by the way, that the District Court on which the District Court allowed it in, that straw man argument is an argument that the District Court used later in denying our motion for new trial on this aspect of it and said that that argument, that version of confidentiality goes too far, and we agree. Our argument is instead that as the District Court at trial had said, which is that even though this material may be protected by peer review protection, I will allow it for the two theories that the hospital wanted to use it for, but, and this is the Court's ruling on the very day before trial began, evidence that is presented in court still has to comply with the federal rules of evidence. And so let me point out, this is a 1981 case, right? It's a case that arises under federal law. Correct. And under the federal rules of evidence, 501, cases that arise under federal law or under the privilege rules and the like are federal rules. There is no obligation slavishly to follow what a state does, although of course federal law is often informed by what state law provides. But I think that's a gap you need to get over. And I would say the other thing is the District Court decides that really this provision of purpose of these peer review statutes isn't really implicated by this evidence that he's complaining about. You know, the proceedings and reports are protected from disclosure, but these factual accountings, as I think you concede, are not privileged just because somebody later looks at them in a peer review process. I agree with it, certainly at least the second part of what Your Honor said, but I think that brings us as to how they came into this court. We are not, we are precisely because we are not making the argument that was attributed to us, we have always said that yes, if the hospital had brought live witnesses in to talk about these underlying facts, those would not be protected by this way overblown view. That's just a hearsay argument though, that doesn't have anything to do with whether it came out of a peer review process or anything else. They flow together, Your Honor. It is true, and certainly the second half of what I was going to say, that almost everything, because we were dealing with records, inevitably snowballed into huge hearsay problems. But before we get to the hearsay problem, and there were double hearsay in a couple of instances, on the basic relevance argument, it is still an evidentiary question under the federal rules of evidence because our argument was all along, and the district court recognized it, it was the district court that kept on saying, how can this evidence that's out there in a protected status, how could it ever get to Houston or Minneapolis or D.C. or whatever hospital if it is protected? We had conceded all along, if the hospital had a witness who had said, nobody cares about this statute. Sure, we care about HIPAA, but we don't care about this statute. People just hand that information, they violate the statute all the time. What is, is peer review a routine? Does everybody get peer review from time to time? In practice, probably yes, Your Honor, but it's only, it only counts for peer review for privilege or confidentiality, for protective purposes, if it comes to some kind of exchange, counseling, interchange, in which there is a formal proceeding with the potentiality of either punishment or adjustments. Does that start with a complaint, where somebody is complaining about something going on, and then it comes in with peer review? I would say, yes. It's not a routine thing that every, I guess, doctor at some point has to go through, just to update, see how they're doing. I would say, there may be, but in the kind of thing we're talking about here. Okay, in this context, we're talking about, there's a complaint, and then there's a process, and you're saying, is this process protected, where nobody can know about it, or if you come in to testify, does that make a difference? They, well, I think that's the distinction that Judge Wood and I were getting at before. Yes, if they pull them out, and they testify about their own experiences, not what they told the, it's just like attorney-client privilege. You can't say, did you tell your lawyer? But you can ask them, what happened? The underlying information is available, and the hospital was never able to close the loop to the satisfaction of the district court. The district court kept on saying, but wait a second, in the long colloquy that we reproduced in full, how, what's the mechanism? How would a hiring committee down the road ever know about this? And the best that the, that counsel could say is, well, people talk, but potentially they would. I don't know. This is chief, this is lead counsel on the other side, you may very well be able to find out. You may very well be able to find out. But the thing is, the way this really happens is, Dr. Homden's testifying on direct examination about his unblemished reputation, and the district judge agrees with the hospital that the door is now open for impeachment testimony. We will, so Your Honor. The impeachment testimony is based on incidents. People could observe, was he in the clinic that day, or was he not in the clinic that day? Was he late? Was he not late? I mean, these are just facts out there in the world. And I'm having trouble seeing why this really gets into, too much into the peer review. And of course, the hospital was trying to say, you're seeking damages for ruined reputation. Maybe your reputation wasn't ruined as much as you said it was. All of those are correct, Your Honor. And we agree that if, the first one that Your Honor referred to, that particular incident, that became almost 100% a significant hearsay question, because the document that you're referring to, Dr. Homden confronted with it, said, I don't remember it. I don't recognize it. And then counsel continued basically to either read from it or paraphrase from it. That was it. And then used it in her closing argument. Can I ask you quickly about the closing argument point? Was any objection raised in closing? No. And of course, that's a tricky tactical point. It was difficult. Tricky tactics are one thing, saying we should reverse a civil verdict based on an objection not made in closing argument is very rare. Can you point us to some examples? Not off the top of my head, but I would say this was- It's not an off the top of your head kind of question. That's what you're asking us to do here, right? But not because of, that was just icing on the cake. Our argument is that- So we don't need to worry about the closing argument then? Not in and of itself, but it merely added to our view of the sort of inevitable train sliding down the hill that the district- The documents that you're complaining about, were they actually introduced into evidence or were they simply being used to question Dr. Hamdan? They were not, at least the one that Judge Wood referred to, was not introduced. It was read from or paraphrased from. I think that is true of the others as well. They were not introduced as exhibits. Okay. All right, thank you, Mr. Hodes.  May it please the court. My name is Lisa Dillman on behalf of Indiana University Health North Hospital. The district court's order denying Dr. Hamdan's motion for a new trial should be affirmed and the jury verdict finding no liability on the part of the hospital should stand. The standard of review for all issues on appeal is an abuse of discretion standard. For at least three independently dispositive reasons, the district court's order should be affirmed. First, Dr. Hamdan did not object on the basis of peer review protection in the lower court. Second, even if he had, he never proved the peer review protection attached on a document by document basis as is required. Third, these were not peer review materials that were used during the impeachment of Dr. Hamdan. Appellant concedes on page 15 of his opening brief that he did not formally raise the privilege and your honor struck on a good point. Under federal law and the Shatterer exception and Matisse, we probably shouldn't even be talking about peer review protection. But in the event that the district court does look at the state court's privileges, we still believe that the peer review protection was never proven. In order to prove it, even under the state law, you have to show that the complaint implicates the conduct of a healthcare provider, of a doctor. Just because a complaint is generated does not then mean peer review has begun. It has to, that complaint also has to impact patient care. Because the purpose of peer review statutes are to evaluate patient care. Even then, if the complaint involves a healthcare provider and implicates patient care, it's still not peer review material unless and until a peer review committee is convened for the purpose of reviewing the conduct as it impacts patient care. So the problem in the court below is we have no record of a showing that these peer review committees were convened to review Dr. Hamden's conduct at all of these other places that he worked. Without that showing, the protection can't attach. So whose burden, in your view, is it to make that showing? It's Dr. Hamden's burden. If he wants the protection of the statute and not allow the hospital to use the material, he must prove it up. So your sense is that when we say peer review, we really are kind of underlining it or something. We're referring to a very specific type of process, number one, and very particular protection that goes along with it. And I guess you're also relying on the general rule that we try to construe privileges in a way that doesn't deprive the court of the ability to find the truth. That's right, Your Honor. It is a formal process, to Your Honor's question. Just because a cath lab nurse complains about a doctor's procedures, even if it is about how he treats that patient in that cath lab, it's still not peer review until the committee is convened. And some of this material that was produced, all of this material was produced from non-parties, from the various institutions where Dr. Hamden had worked previously. None of the material was produced with an objection by those institutions or asserting any peer review confidentiality or peer review protection themselves. And I think all the parties agree that the peer review protection does belong to and benefit the institution that has convened the peer review committee. So there's no third-party beneficiary idea that the doctor who's the subject of the proceedings can also object? Well, the doctor who's the subject of the proceedings could have objected and could have raised the privilege. He didn't. And even if he would have raised it... So he would have gotten these materials at the time they were produced, I assume. He did. All parties got the materials. The materials, like I said, were produced by non-parties without resistance. They were produced... They were under a protective order, though, right? Correct. And that protective order not only gave Dr. Hamden the ability to implicate or designate certain things confidential, but it also permitted... The folks that produced those documents in that protective order permitted disclosure to the jury. So we have to assume at some point that if a hospital has material that it's ready to hand over without resistance, besides the protective order that permits use in front of the jury, then it's going to assert its peer review privilege. And if it doesn't, then the other person who wants to take advantage of the peer review protection must at least assert it and must prove it. Those documents that you referred to, they're some sort of an internal thing, then. Let's say you said a nurse or somebody who complains and said, what's going on? So there may be something that's written, it's in a file, and that was under the protective order? Yes, Your Honor. Okay. But it wasn't peer review material. It was material that was generated within the hospital's own structure. Yes, it was. What complicates the matter just a little bit is we have four different institutions, four different non-parties that produce material. So the one that comes to the closest to your example is the material received from St. Elizabeth Hospital from Lafayette. That had nurse complaints in it about inability or difficulty to work with Dr. Hamden because of unprofessional behavior. In that document production, however, as trial counsel explained on the record, she found material from a prior hospital where Dr. Hamden served his residency. So this material did flow freely through the medical community. What makes the question even more hard is one of the institutions that produced documents was Wayne State University, where Dr. Hamden did his fellowship. Wayne State University produced the probation letter that was the hot topic during trial wherein Dr. Hamden was placed on six-month probation. Arguably, the university who produced an academic record is not even anywhere close to implicating a peer review privilege. So this was a matter, he was placed on probation, according to this letter, placed on probation for lying to his faculty colleagues for his reason for missing a clinic shift. That does not, it does implicate health care provider conduct, but not implicate patient care. No peer review convened to review it. And arguably, when the university produces it, it's not even under the peer review framework. Counsel, I had, maybe I'm oversimplifying this, but I had thought these peer review privileges were aimed primarily at production of evidence in disputes with outsiders to the institution. And the concern was that, for example, concerns about malpractice liability would discourage effective monitoring of care, potential mistakes, and so on, within the hospital. Is that right? That is right. That's not implicated at all here. Not at all. It comes up, you're right, Your Honor, the purpose was to enable hospitals to police their own behavior for the purpose of improving patient care. So that if we are doing something wrong in the cath lab, for instance, the nurses should feel free to speak up. Other workers should feel free to speak up. We can then, in private, talk about the problems for the express purpose of improving in the future without worrying about ramifications from that. The purpose has also been implicated to protect people who do report these incidents from defamation suits, for instance, but certainly not in this context to basically put a gag order on these materials to protect a reputation. And when you step back even further from that and you look at other professionals who work at various places, if I work at three law firms before I come to my present place of employment and I'm very difficult to work with and I'm condescending and I fail to collaborate and they drop notes in my employee file, that's not ever going to be protected with a cloak of privilege. And that's the type of material that we were talking about here. We were talking about if Dr. Hamden adhered to his $58 million reputational damages claim, we certainly had a right to show that his reputation might not have been that unblemished along the way. If he was claiming that the hospital caused all of his reputational damage, we certainly had a right to show how he interacted with coworkers along the way. One point that I do want to make is there is some question or an argument by Dr. Hamden that there were enough indications in the record that the district court was aware that a privilege or a peer review protection argument was being made. I want to point out that before trial began, in the district court's order on various pretrial motions, the court was struggling with this issue and was trying very, very diligently to get its hands around it. And the district court said, and I believe it's in footnote 2 on its entry on various motions, the district court said, please submit those materials to me so that I may review them if you have a problem with them. I see my time has expired. Thank you. All right. Thank you very much. Mr. Hodes, your time also expired, but if you have about a minute, 45 seconds worth, I'll let you quickly respond. Just on specific points, first of all, we agree with the last argument that counsel made. Yes, the hospital was perfectly entitled to make arguments that Hamden's reputation was already tarnished. They just couldn't use documents or material that was part of a peer review. That leads to the main point that I was going to make, is that the argument which appeared for the first time in their brief to this court, that peer review somehow requires proof or a foundation, that is simply not correct. There's nothing, they cited nothing for that. It is extremely broad as to what counts for the protection, whether it's privilege or confidentiality. No. Their counsel at trial, she said, counseling is enough when a supervisor counsels a position. Dr. Hamden or Dr. X, you must do such and such. We've had complaints. That counts as peer review. That is in the statutes, that is in the cases. In addition, it is correct that patient care, patient safety is the touchstone, but that doesn't explain why in Michigan a security guard, materials about a security guard who threw some family members out was covered, a staff member who messed with a fan cord, that material was considered to be privilege. Finally, one question in response to what Judge Hamilton had said about the protective order, counsel said that the protective order allowed disclosure to the jury and those third parties never came in and rejected just quickly. The protective order says production by a party or a non-party does not waive any applicable privilege or protection that's in there, and secondly, it's just simply unrealistic for a hospital in Michigan having responded to a federal court subpoena in Indianapolis months ago, years ago, to be able to come in and say today is the trial, today is the day we want to assert our privilege. Thank you very much, Mr. Hodes. Thanks as well to Ms. Dillman. We'll take the case under advisement.